IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RHONDA RENFROE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:15-cv-349-TFM |
| ) | [wo] |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, Rhonda Renfroe ("Renfroe" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying disability insurance benefits and supplemental security income benefits.

### I. NATURE OF THE CASE

Renfroe seeks judicial review of the Commissioner of Social Security Administration decision to deny her application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The court may affirm,

reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also*

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid.  *Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3).  However, despite the

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;[3]

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

---

[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Renfroe claims disability as a result of ischemic heart disease and Affective/Mood disorders (R. 58,116,117). Following initial administrative denial of her claim, Renfroe sought a hearing before an administrative law judge ("ALJ") (R. 58, 119-129, 133-136). On January 9, 2014, ALJ Elizabeth De Gruy ("the ALJ") convened an evidentiary hearing by video teleconference between the ALJ in Jackson, Mississippi and Renfroe and her non-attorney representative in Montgomery, Alabama (R. 73-91). The ALJ received direct testimony from Renfroe, and a vocational expert. The remaining evidentiary record consisted of medical reports from treating and consultative sources and residual functional capacity assessments completed by a single decision maker ("SDM") and medical consultant who reviewed Renfroe's medical records upon request of Alabama Disability Determination Services.[5] The ALJ rendered an

---

[5] R 92-115. Robert Estock, M.D. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).

Anitra Hudson, SDM "In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. The decisionmaker will make the disability determination after any appropriate

unfavorable decision on February 18, 2014.  (R. 55-66).  On March 27, 2015, the Appeals Council denied Renfroe's request for review (R. 47-51).  Renfroe filed her Social Security Appeal on May 21, 2015.  *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Renfroe has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2)[6]; the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Renfroe can perform light work (Step 4). (R. 62-66).  Renfroe thus had not met her prima facie case for disability and the burden rested upon Renfroe to prove she was unable to perform the suggested jobs.

At Step Four, the ALJ found Renfroe had the RFC to perform a reduced range of light work as light work would not require Renfroe to perform work related activities precluded by her residual functional capacity. (R. 62-66).  Consequently, the ALJ found Renfroe has not been disabled since the alleged onset date.  (R. 25).

## VI. ISSUES

Renfroe raises two issues on appeal:

(1) The ALJ erred when relying on the opinion of a Single Decision Maker (SDM). Substantial evidence does not support the administrative law

---

consultation with a medical or psychological consultant. The medical or psychological consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us (see § 404.1615). However, before an initial determination is made that a claimant is not disabled in any case where there is evidence which indicates the existence of a mental impairment, the decisionmaker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment pursuant to our existing procedures (see § 404.1617). In some instances, the decisionmaker may be the disability claim manager described in paragraph (b)(1) of this section. When the decisionmaker is a State agency employee, a team of individuals that includes a Federal employee will determine whether the other conditions for entitlement to benefits are met." 20 C.F.R. § 404.906(b)(2)

[6]  The ALJ found the following "severe" impairments: coronary artery disease, status post coronary bypass surgery; depression; diabetes mellitus, and diabetic neuropathy. (Tr. 60).

    judge's (ALJ's) decision because the ALJ gave significant weight to the SDM's opinion when deciding Rhonda Renfroe's (hereafter referred to as Ms. Renfroe), residual functional capacity (RFC) assessment.

(2) Substantial evidence does not support the ALJ's residual functional capacity (RFC) assessment because it is inconsistent with the ALJ's findings. At step two of the sequential evaluation the ALJ found a "severe" mental impairment, i.e., depression. But the ALJ did not express a single mental functional limitation in the RFC assessment, despite finding a "severe" mental impairment.

Pl. Br. at p. 1.

 The Commissioner re-words the issue as follows:

(1) Whether the Administrative Law Judge committed reversible error in relying on the statement of a Single Decision Maker where substantial evidence otherwise supports the Administrative Law Judge's residual functional capacity finding.

(2) Whether the Administrative Law Judge committed reversible error by not including mental limitations in her residual functional capacity finding where the hypothetical question to the vocational expert included mental limitations.

Def. Br. at p. 1. Regardless of the wording, the Commissioner does address the issues raised by Plaintiff in her brief.

### VII. DISCUSSION AND ANALYSIS

**A. Substantial evidence supports the RFC findings aside from the SDM opinion.**

 In a nutshell, Renfroe argues that the ALJ improperly relied upon the opinion of the SDM Anitra Hudson who is not a physician or one who may offer a medical opinion. Renfroe also cites internal Social Security Policy that SDM opinions are not entitled to any evidentiary weight as medical opinions. *See* POMS DI 24510.05; Letter from Frank Cristaudo, Chief Administrative Law Judge re: Evaluation of Single Decisonmaker Residual Functional Capacity Assessments Reminder May 19, 2010. While the parties and the Court agree that Hudson is not a physician or medical provider who could provide a medical opinion, much less a medical

opinion that could be relied upon, the parties apparently fail to notice that Robert Estock, M.D. did electronically sign the August 30, 2012 RFC assessment. (R. 97, 110).  The signature of Dr. Estock appears after specific reference to a number of medical and mental health records generated by Renfroe's treating physicians and healthcare providers.  From the RFC assessment signed by Dr. Estock the Court concludes that Dr. Estock concurred with the opinion of Ms. Hudson as the SDM.  Setting aside the fact that Dr. Estock concurred with the opinion of Ms. Hudson, the Court finds the remaining evidence before and considered by the ALJ was sufficient to support the ALJ's RFC finding.

A claimant's RFC is an administrative finding as to the most the claimant can do despite their limitations. 20 C.F.R. §§ 404.1527(d), 404.1545(a), 416.927(d), 416.945(a) (2015); SSR 96-8p, 1996 WL374184 (S.S.A.).  The ALJ has the duty to determine the RFC of the claimant 20 C.F.R. § § 404.1527A(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). The ALJ may find the RFC from all the relevant medical evidence and other evidence in the case record, not just medical opinions. 20 C.F.R §§ 404.1545(a)(3), 416.945(a)(3); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 Fed. App'x 483, 486 (11th Cir. 2012)

Aside from the opinion of the SDM, the ALJ cites and considered substantial evidence to support her RFC finding.  The ALJ had and considered the medical records related to Renfroe's heart attack and medical records subsequent to the infarction plus mental health records.  (R-60-64).  While Renfroe's coronary health is not optimal, the medical records the ALJ considered indicate Renfroe had many normal health findings such as no pleural effusions, no heart enlargement, no palpitations, no tachycardia, and no syncope or presyncope.  A medical examination by Mercy Medical Center, in the normal course of treatment post infarction revealed Renfroe is a well-developed and well-nourished person who ambulates normally with a normal

gait and station. Her lung and cardiovascular examination findings were within normal limits. Renfroe had normal motor strength and tone plus she had no cyanosis, edema, or varicosities. In addition, Renfroe is described as enjoying an active lifestyle. Medical records also indicate Renfroe was noncompliant with her medical regimen to minimize the risk of heart problems. Renfroe is diabetic and hypertensive which her medical providers treat by medication. Renfroe claims she is unable to afford medication yet her records indicate Renfroe smokes two packs of cigarettes a day.

The Court finds that while the ALJ gave significant weight to the state agency's medical consultant, she did so only because the *opinion was consistent with the other evidence in the record*. (emphasis supplied.) (R. 64) The ALJ went to great lengths to discuss the other evidence in the record and clearly performed her role to determine the RFC. Nothing persuasive is before the Court which indicates that the ALJ relinquished her duty to the SDM or Dr. Estock to determine the RFC. In fact, the ALJ made one reference to the SDM/medical consultant which was merely to state the opinion was consistent with the record which includes voluminous, longitudinal medical evidence from treating physicians and health care providers. The analysis which precedes the one-line reference to the opinion is more than adequate to demonstrate the ALJ made her own RFC finding from adequate evidence.

Alternatively, to the extent any error was made, the error was harmless. Harmless error occurs when the correct application of appropriate regulation would not contradict the ALJ's ultimate findings. *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). It is not the province of this court to reweigh the evidence especially as the record relied on by the ALJ is replete with sufficient information from sources other than the SDM for the ALJ to determine the RFC.

**B.     The mental RFC was properly determined by the ALJ.**

Plaintiff argues the RFC vis a vis mental impairment is defective because the ALJ did not include mental limitations in her RFC assessment. The Commissioner concedes, as well she should, that the RFC does not expressly state Renfroe would be limited to simple one to two step tasks. With respect to Renfroe's mental health the ALJ noted

> Psychiatrically, the claimant had good judgment. Mental status revealed a normal mood and affect. The claimant was active and alert. She was oriented to time, place and person. The claimant reported having no depression (Exhibit 9-F). The undersigned notes that the claimant has some depression; however, her depression appears to coincide with environmental circumstances in her life. In 2008 it was a divorce. She was not seen after 2008 until she returned to mental health in 2012. She is on medication and it has helped. The undersigned notes there was also some question of malingering (Exhibit 12-F). The claimant did not want to increase med dosage in October 2013 as she was doing okay. The claimant was smiling and alert. Everything was within normal limits except mood was depressed (Exhibit 14-F). It is noted that the undersigned has given moderate limitations in depression due to side effects from medications. The claimant testified that they make her drowsy so she cannot perform work activity that requires more than simple one to two step tasks. While the undersigned has limited the claimant due to drowsiness from medication, it is notable with regard that she has complained to her therapist that she has difficulty going to sleep rather than complaints of drowsiness.

(R. 64).  While the RFC does not expressly limit Renfroe to simple one to two step tasks, the ALJ asked the Vocational Examiner (VE) a hypothetical limiting Renfroe to jobs which entail simple one to two step tasks. (R. 89). In response to the hypothetical containing all of the limitations of Renfroe, the VE opined there were a number of jobs Renfroe could perform. (R. 89). In circumstances such as this, it is unnecessary to remand as the administrative result would not change and thus, the error harmless.

Based on the above, the Court finds no reason to remand or reverse on this point as the ALJ already limited Renfroe to simple one or two step occupations.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.  A separate order will be entered.

DONE this 4th day of August, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE